# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

**STEPHANIE DENISE MELTON**                                **PLAINTIFF**

**V.**                      **NO. 4:18CV00111 JLH/PSH**

**SOCIAL SECURITY ADMINISTRATION**                      **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Stephanie Denise Melton, applied for disability benefits on January 7, 2015, alleging a disability onset date of January 15, 2010. (Tr. at 24). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Ms. Melton's claim. (Tr. at 39). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Melton has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Ms. Melton had not engaged in substantial gainful activity since the alleged onset date of January 15, 2010, although she had worked at less than substantial gainful

activity during that time. (Tr. at 26). At Step Two of the sequential five-step analysis, the ALJ found that Ms. Melton had the following severe impairments: arrhythmia-atrial fibrillations with syncope and hypertension. *Id*.

The ALJ found that Ms. Melton's impairment did not meet or equal a listed impairment. (Tr. at 30). Before proceeding to Step Four, the ALJ determined that Ms. Melton had the residual functional capacity ("RFC") to perform work at the sedentary level, with some limitations. *Id.* She could occasionally stoop, crouch, kneel, bend, crawl, and balance. *Id*. She could never work from ropes, ladders, or scaffolding. *Id*. She would have to avoid hazards such as work from unprotected heights or operating a vehicle. *Id*. She would be limited to simple, routine, and repetitive tasks with supervision that is simple, direct, and concrete. *Id.*

The ALJ next found that Ms. Melton was unable to perform her past relevant work. (Tr. at 38). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Ms. Melton's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, such as document preparer and phone clerk. (Tr. at 39). Therefore, the ALJ found that Ms. Melton was not disabled. *Id*.

### III. <u>Discussion</u>:

    A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Ms. Melton's Arguments on Appeal

Ms. Melton contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the RFC failed to incorporate all of her limitations, that the ALJ did not fully develop the record, and that the credibility analysis was insufficient. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Ms. Melton suffered from some heart conditions that required trips to the ER over the relevant time-period, but most objective testing yielded mild results. In June 2010, a cardiac exam showed no evidence of inducible myocardial ischemia. (Tr. at 340). Her doctor recommended conservative medication management. *Id*. The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). In August 2010, Ms. Melton had a normal respiratory, cardiac, and neurological exam. (Tr. at 343).

A heart catheterization showed normal left ventricle chamber size and no coronary artery

disease. (Tr. at 624). When Ms. Melton complained of syncope in September 2010, her doctor found tachycardia, but also normal peripheral pulses and a structurally normal heart. (Tr. at 372). He said she could return to work as a receptionist. *Id*. Still, he recommended she not drive. Id. An angiogram in December 2010 showed pleural thickening but normal cardiac arteries and normal systolic function. (Tr. at 652, 657). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

A June 2011 ER visit for syncope revealed regular heart rate and sinus rhythm. (Tr. at 452). Ms. Melton was given Tylenol and discharged on the same day. *Id*. In July 2011, a cardiac exam was normal and Ms. Melton said she could continue to work. (Tr. at 33, 353). An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). Her doctor refilled her Metoprolol prescription. *Id*. Cardiac testing was again normal at an ER visit in August 2011. (Tr. 465).

The next treatment record was an ER visit in November 2014. Ms. Melton's blood pressure was slightly elevated but cardiac and respiratory exams were normal with normal sinus rhythm and no acute cardiopulmonary disease. (Tr.484-485). She was discharged the following day. *Id*.

At a consultative physical examination in March 2015, cardiac exam was normal and Ms. Melton had no muscle weakness. The examiner diagnosed cardiac arrhythmia and moderately severe hypertension. (Tr. at 375-380). The ALJ relied heavily upon this opinion to determine the severe impairments at Step Two.

At an ER visit in April 2015, cardiac and respiratory exams were normal. (Tr. at 394-395). In February 2016, Ms. Melton delivered a baby via C-section at 36 weeks, having shown borderline systolic dysfunction and moderate pulmonary hypertension. (Tr. at 531, 535). She "coded" during

4

the delivery but did not lose pulse. (Tr. at 34). Visits to Saline Heart Group in 2016 revealed normal cardiac and respiratory exams. (Tr. 555, 584).

The ALJ noted that Ms. Melton was not always compliant with her physicians' treatment and dietary recommendations (i.e., she continued to smoke). (Tr. at 34-36).

Ms. Melton first argues that the RFC did not incorporate her limitations. A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). Objective testing throughout the relevant time-period showed normal or mild heart conditions. Ms. Melton did not require surgical intervention. She required nothing more than medication management. And most of her treatment was at the ER; she did not present for regular and consistent treatment. The ALJ gave great weight to the medical consultant's opinion and assigned an RFC for sedentary work with postural limitations. He went further than the state-agency reviewing doctor's assignment of a light work RFC, demonstrating he believed some of Ms. Melton's complaints. (Tr. at 37). The RFC sufficiently incorporated Ms. Melton's limitations.

Also, the record was fully developed. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id.* The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to

make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). There was no medical issue in conflict requiring further development, and Ms. Melton did not provide a medical opinion to contradict the medical consultant's report. Furthermore, her attorney said at the hearing that the ALJ had done a wonderful job of developing the record. (Tr. at 81). He did not ask the ALJ to obtain further evaluation. The ALJ made his decision based on a fully developed record.

Finally, Ms. Melton contends that the ALJ failed to conduct a proper credibility analysis. Social Security Ruling 16-3p, 2016 SSR LEXIS 4 ("SSR 16-3p"), removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). SSR 16-3p became effective on March 28, 2016, and the underlying analysis incorporates the familiar factors that were in place prior to the new ruling. *Id.* The ALJ must still give consideration to all of the evidence presented relating to subjective complaints, including: 1) prior work record; 2) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

The ALJ listed these factors in reference to new Ruling 16-3p, and he discussed several of them. (Tr. at 31). He noted conservative medication management, and Ms. Melton's ability to work during the period in question. (Tr. at 33, 36). He discussed Ms. Melton's ability to engage in activities of daily living like cooking, cleaning, and attending her children's sporting events. (Tr. at 36). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484,

487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The ALJ noted that the only functional restriction imposed by a doctor was to refrain from driving. (Tr. at 37). He mentioned side effects from medication but found they did not warrant additional work restrictions. The ALJ properly considered the factors required to evaluate subjective complaints.

## VI. Conclusion:

There is substantial evidence to support the Commissioner's decision that Ms. Melton was not disabled. The ALJ's RFC properly incorporated all of Ms. Melton's limitations, the record was fully developed, and the ALJ conducted a proper analysis of subjective complaints. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 13th day of September, 2018.

_____
UNITED STATES MAGISTRATE JUDGE